Case number 19-1398, James Fox et al. v. Heidi Washington. Oral argument is not to exceed 15 minutes. I'll provide Mr. Manville for the appellants. Good morning, Your Honors. Good morning. My name is Ryan Keast. I'm a third-year law student with the Michigan State College of Law Civil Rights Clinic. Here representing the appellants in this action, Mr. James Fox and Mr. Scott Perot under the supervision of my professor, Dan Manville. If it's all right, I would like to reserve three minutes of my time for rebuttal. Very well. Thank you. Mr. Fox and Mr. Perot's claim presents some important issues to this court at the intersection of race and religion that really tests how willing courts are to challenge a religious belief on grounds other than sincerity. And that's an important fact of this case. Our clients are sincere in their beliefs. The lower court found as such, and Eppley has never challenged that finding. But that sincerity isn't just relevant as that first threshold question under RLUIPA. Under this circuit's precedent in Hyde v. Thompson, sincerity is also relevant in the second question, whether a substantial burden has imposed. Indeed, under this circuit's precedent, sincerity is the touchstone of that test. That test turns on the impact on the individual inmate rather than the centrality of those beliefs as interpreted by prison officials or by federal judges. And so in this case, we would ask that this court correct the lower court's mistake in examining that centrality. And we would ask that this court reverse the lower court's opinion and hold that a substantial burden has been imposed on our client's religious beliefs. We would also ask that this court address the merits of the last prong, the compelling interest in Lee's case. I've been thinking about that, but this was a bench trial, and Magistrate Green was responsible for finding facts after the bench trial, which applies to the legal standards. And the legal standards of the third prong, which he never got to, are whether the government had a compelling interest and whether they used the least restrictive means to burden the religion. And, I mean, aren't those factual issues? Your Honor, we would contend that that's a conclusion of law and that on this record that has been fully developed in the bench trial that the court could necessarily rule on the evidence the government has proffered in that full bench trial. No, but we'd be reviewing the record for the first time without a ruling by the trial judge. And I know we probably have discretion if it's a legal matter, but it's somewhat unusual for us. We usually let the trial judge have the first shot at it and give him a little bit of discretion here. And I actually have been debating this point, whether we should do it or not, or whether we should remand. I mean, if we agreed with you that the magistrate erred in not finding a substantial burden on the religion, then what do we do with the third prong? Do we remand it for findings of fact and conclusions of law, or do we rule here? I think it's more prudent for us to remand it. Your Honor, I would agree. I realize you're a third-year law student. Well, I would agree you have a lot of discretion on remand here. And I guess our biggest concern is that the further we get away from the initial recognition decision, the further we get away from the government's actual interests and their genuine interests. And so our primary concern is that there will be a lot of additional legal arguments and a lot of additional justifications proffered and how the government will sort of twist and transform that. And so there may be some sort of middle ground to your question, where it's not necessarily you rule on all of it, or it's not necessarily you don't even touch it. But maybe a more limited remand that would specifically address the tab in the government to these first interests they've proffered in the first place, those custody and those security concerns. And so you could actually limit the scope of your remand in that manner. Well, in the least restrictive means, I assume the trial judge through the trial knows a lot more about the functioning of the prisons in Michigan than we do at this point. And factually, how much restrictions are allowed without jeopardizing the security of the prisons. I mean, I might want to at least know what he thinks about it, I guess, before I rule. I understand your concern with the least restrictive means. And that necessarily does require some facts. Because I think that's probably the key to it, because I think the prisons do have a compelling interest for security. And this religion, which is racist in beliefs, could disrupt the security of the prison. But nevertheless, they have a right to religious freedom. And is there a least restrictive means to allow them to practice in this setting without totally disrupting the prisons? You know, if there is, I'd like to know what it is, I guess. And you bring up a good point, Your Honor, that it helps to examine these compelling interests rather than the abstract or generally, but specifically on the record. And examine and scrutinize the government's evidence that they've proffered in the actual case. And don't you want to have an opportunity yourself to respond to the claim of least restrictive means? Well, Your Honor, in the way the policy is structured for the department's policy, that they've denied complete recognition at the outset. And so there could be no more restrictive means, I guess. It would be our contention that even five minutes of chapel time would be less restrictive than what the prison currently imposes in this matter. I mean, you only have the two plaintiffs, and it's not a class action. It's just these two gentlemen that want to practice their religion. And they perhaps could be shifted around the prisons in Michigan to somewhere where it is more secure. Or they could, you know, they might be able to make some accommodations. But I just don't know. And I don't know how practical that is. But, I mean, that's something that could be explored below. Okay, but that's a question. But the magistrate decided this on the second step. He said there was no substantial burden on the religions. And he did so by saying that the other, well, first of all, he said praying in a congregation with others of your religion somehow is not important or is not religiously important. A lot of people who go to church and pray with others would be kind of taken aback by the fact that they don't think that the magistrate doesn't think it's important to pray with others of your religion. And then the other thing was he said the other religions could accommodate their beliefs, do the holidays. And your position there is that this religion has a tenet that you have to practice the religion only with the people that are true believers. How did he get away from that? Just a slight distinction. It matters about the tenets of our client's faith and what they sincerely believe rather than the tenets of the religion at large in the abstract necessarily. And so the lower court examined the tenets at large and examined, and that's exactly what prison officials did here. It was the central office in Lansing Googling our client's religion and then making this determination of what's really important to them and what is their main needs, what's their primary and core tenets. And then looking at those tenets and evaluating, sort of Venn diagramming them with other religions and seeing if they could master, if their needs could be met by existing recognized religions. And so that's a motivation that we would contend is wholly improper. So what do you contend are the procedures that they should have undertaken to make that determination? Because if you say they have to look solely to the individual complainants to determine what is their sincerely held belief, that clearly on a prison policy could lead to manipulation. It could lead to self-serving assertions to circumvent some of the security and other issues at the prison. So what should have been the test? It's a good concern, Your Honor, and I think that's a question of sincerity. And I think the step one procedurally would be to talk to that inmate to figure out if he's sincere. There's no question they're sincere. They're not contesting it, are they? No, no. They're not contesting the sincerity of the plaintiff's belief in their religion. That's correct. But just at large, that's what prisons would usually do. And that's the avenue that they should challenge these sort of inmate requests gone wild, as the court put it in Hyatt. Oh, OK. So this is more of a hypothetical, Judge? It was. Because here, the first prong is whether their belief in this religion is sincere. I didn't think that was an issue. He said that the prison's procedure of Googling and Venn diagramming to ascertain the tenants was the procedure they undertook. Oh, rather than focusing on the plaintiff. Right. So what should they have? They should have asked our clients, first and foremost. That would be the way to establish it. Your clients did testify, didn't they? Not so way down the road, Your Honor. The initial recognition decision would have been made in 2017, and then a year later our clients testified. When they denied the recognition of the religion? OK, this is the stage we're talking about now. Right. That's correct. OK. And if we're looking to the particulars of each case, does it not matter that the inability to worship together in this case is not but-for caused by the determination about Christian identity because they now reside in different facilities? Well, Your Honor, it brings up an important point about this policy, and that's this policy and that decision to deny recognition is the but-for decision. And just to broadly kind of examine this. And I understand that. I'm struggling just a little bit with the practicalities of focusing just on these two, which is correct. What is the sincerity of their belief? But they are no longer in the same facility. So how does that work where we are now because they couldn't communally worship together because they're not in the same facility? Were they in the same facility when they filed the lawsuit? When they filed the lawsuit, yes. OK, I think that's kind of important. And the Michigan Department of Corrections are the ones that separate them, right? That's correct. So I don't think they can moot the case by separating them on their decisions. The magistrate said, well, there's no evidence that other people would show up for a communal worship, but we don't know. They posted we're going to have a worship service at 11 o'clock in the prison for Christian identity. There may be people who wandered in there. They're just interested in knowing what's going on and may want to convert. Your Honor, the whole point, I guess, here is that under the prison policy, our clients are precluded from doing just that, from saying that advertising, from even approaching someone in the yard and saying, oh, have you heard about our relationship? Most churches are open to other people to come in, and they seek converts. And that's, I guess, the significance of this. And let me understand the last thing you said. You think that they cannot even speak with other inmates about their faith? That's correct, Your Honor. Because it is not, because the policy bars, does the policy bar them from all of the specific things, meeting together, being called out, having a location to go, ultimately perhaps finding a preacher for them? But it also bars them from even speaking of their faith? Yes, Your Honor. So the way the recognition system kind of works is that each recognized religion in prison is given a subsidiary of a prisoner's benefit fund. They're allowed to sort of advertise that, hey, we're having this service at this time. And they're allowed to discuss or meet in the yard, or proselytize, I guess is the word I would use. Whereas the policy actually forbids that if you're a member of a non-recognized faith. It forbids you from speaking to other inmates and saying, hey, would you like to join my religion? Even, not to belabor the point, but I understand how it prevents them from doing that in the context of their right to meet together on their Sabbath. But you're saying there's also a First Amendment prescription against seeing another inmate in the cafeteria and saying Christian identity is my faith and it matters to my life. Well, I would have to double check the policy on exactly that point. Yeah, I think it may be a little bit less invasive than that. The point would be that it's very strongly worded that non-recognized faiths don't have legitimacy. They don't have necessarily the same rights that other recognized faiths would have. And so that would be the main point that I would want to make. I would also like to address just briefly the compelling interests offered by the government in this case. So Deputy Director McKee offered two justifications. The first was security and the second was custody. And our contention is just that neither of those interests are backed up by any substantial evidence or any specific. Is that because they allow other religions that are racist in nature to practice in the prisons? That's correct, Your Honor, with similar sort of beliefs. And they haven't had the disruptions that they claim? That's correct. They have offered no evidence of any problems with Christian identity in prison, with our particular two inmates, with anything within the prison context really. I see that my time is up. All right, you'll have your three minutes. Thank you, Your Honors. Good morning. Good morning, Your Honors. My name is Assistant Attorney General Sarah Robbins, and I represent the Defendant Appellee Heidi Washington as the Director of the Michigan Department of Corrections. Just to quickly address Appellant's counsel point on the policy, the policy does not prohibit inmates from discussing their religious beliefs with other inmates. In fact, the trial record had both plaintiffs discuss as evidence how they have talked to other inmates about their religion, be it in their cells or out on their yard. And, in fact, Mr. Fox actually converted to Christian identity faith while he was in prison through talking to other inmates who were members of that faith. But it bars them from the standard methodology of having a service that fits with their sincere beliefs and having people called out to come to the service if they're not recognized, correct? Your Honor, that is correct. Presently, the Christian identity faith is not formally allowed to meet as a group as other religions that are enumerated in the MDOC policy. And there are a large number of them, right? Twenty? Yes, ma'am. There's quite a few religions that are recognized by the MDOC who are allowed to have group services and other religious holiday functions. And at least two of those have the same sort of separatist views, racially? Not identical to the Christian identity faith. But their own racial identity requirements. Somewhat. But yet there are members of, and the trial record discusses that, how the Nation of Islam is not exclusive to just members. It wasn't that followed up. That was the May case, right? Well, at least May dealt with that issue of Nation of Islam, correct? Correct, Your Honor. Okay. And so with the, how is the practice of recognition of a group such as the Nation of Islam different from what's being sought by the petitioners in this case? Well, here the district court made the correct factual determination that the two plaintiffs have not shown that the prohibition on meeting together as a group is a substantial burden to their practice of their faith. In fact, the Was that the right test applied? Well Wasn't that a problem with going back to older law, I think free exercise law, that is not applicable now? when the question becomes not whether you can have your faith satisfied in a pretty good way. You know, you can basically get together in another approved religion's events or services. And their response is, we can't do that. It's the wrong service days. They use the wrong Bible. They have some obnoxious beliefs. We have to meet with our own. Isn't that the test now? The hate test? The dough test? Your Honor is correct that the test is out of the hate case. While the underlying district court did not specifically cite hate, he did use identical language from Lovelace v. Lee and Atkins v. Kastar, which the test was, and this is the test out of hate, substantial pressure on an adherent to modify his behavior to violate his beliefs. And the factual determination by the district court was that the plaintiffs in this case did not prove that. And hate reaffirms that it is the burden of the plaintiffs to factually show that their present situations are substantially burdened by the prohibition on group services. The testimony at trial by both plaintiffs is replete with evidence that their faith has grown. It has matured while they have been in prison, all under this prevention of meeting as groups. Mr. Perrault openly said in his testimony that his Christian identity, faith, education, has continued every day while he's been in prison. He possesses at least five Bibles and religious texts. So that would be an argument never to certify any religion. How can that work? Anyone who is concerned enough with their faith to ask that it be recognized, then the response is you're concerned enough about your faith, obviously you're doing okay, we don't need to certify you. Correct, Your Honor, but they have to show that the present restriction that they are contending that they're not allowed to meet as a group is the substantial burden to their practice of their faith. And the underlying court determined... Wasn't that somewhat like the Wiccan case where they said, well, we want to open the doors and allow, we disagree, some Wiccans want to do communal services and some don't, but we want to be able to invite people to a communal service. And the court found that that was sufficient. Here on the record, in the trial record, the two or at least one of the plaintiffs said they are not a proselytizing faith. They don't actively go out and try to seek to recruit other members. The reason... But help me understand what that has to do with their desire to worship communally with those who are Christian. Well, Your Honor, I was just comparing it to the Wiccan case where they wanted to recruit more people. That is not the case here. According to the trial record, these two plaintiffs want to meet communally with other members who are Caucasian, separate and apart from other race groups to practice their faith. But doesn't that in and of itself suggest that they seek to recruit, draw, or commune with additional people who share that same religious belief? It is unclear from the record, Your Honor, whether or not that is what they... Because your statements right now was they want to meet with other people who share the same, and that would suggest that there is a desire to include more people who share that faith in those religious services in a communal setting. Yes, Your Honor. Your argument that communal worship isn't essential to religion, I mean, I think that's contrary to really the mainstream Christian belief that whenever two or more people worship together, that is a church. Your Honor, that's not what we're arguing here. Well, I think that's what Jesus said. And what they want to do is they want two or more people to worship together so that they can have a church. Correct, Your Honor. And you want to deny them the chance to worship together? Your Honor, in the trial record, there is significant evidence that the MDOC, during their analysis of the application of the Christian identity of faith to be formally recognized, which was brought forth by these two plaintiffs, looked at similarly faiths that had similar holidays, worshipped out of the same Bible. The distinguishing factor here is the racial separatism here. Well, no, the holidays of the Seventh Day Adventists, they fall on a different day, either Saturday or Sunday. They don't match up right, even though they're the same holidays. They are the same holiday. They appear to be celebrated on a physical different day, but there's no evidence. That's important to these people. Their sincere religious belief, they say it's important to celebrate the holiday on the right day, not on some other day. And to say, well, that doesn't matter. You don't have to get together and worship together. You don't have to celebrate the holidays on the holiday. It's hard for me to say that that's not a substantial burden. I understand, Your Honor. However, in the trial testimony from the plaintiffs, there was no explanation as to why an alternate day was not acceptable. Okay, do you think the mainstream Christian religions would say that was acceptable, to celebrate Christmas on November 11th or something, or some other day other than Christmas? Do you think that wouldn't burden the religion? Your Honor, respectfully, that matters not. Well, okay, the Christian calendar does matter a lot, and it's very regimented, but okay. Respectfully, Your Honors, we believe that the underlying district court made the correct factual determination that the plaintiffs failed to show a substantial burden and therefore did not get to the following elements of the height requirements to address compelling interest. What should we do as to the third step that Magistrate Green never went to, because he found no substantial burden? The third step is if there is a substantial burden, the government's burden, not the petitioner's. The government's burden is to prove a compelling government interest and that they have implemented it in the least restrictive means. Should we rule on that? Say you lose as to the ruling by the magistrate. Should we rule as a matter of law on the third step, or should we remand? Your Honors, if you find that the clear error standard has been met with an incorrect factual determination by the district court, thus on the third prong about compelling governmental interest, we would ask that you remand for further factual determination because you are correct. There's not really any analysis from the underlying district court judge. This was a bench trial, so we need more development from him because he is, as Judge Griffin highlighted, the requirements on MDOC for placement and time and space allocations are extremely factual, heavy determination to be made that should not be made from an extremely high level. And there's just not enough information in the underlying record for you all to be able to make a sufficient determination on that fact. Respectfully, the defendant requests that you uphold the underlying decision. Thank you. Thank you. All right. Three minutes, Roberto. I just have a few points, Your Honor, just additionally. First is that, as far as the least restrictive means issue, I'd just like to point out that the Deputy Director acknowledged that there's actually three recognized religions within an MDOC that aren't allowed group services at all. And so I'd just like to point out that distinction, that even if we don't make it to the religious conduct issue necessarily, it is that recognition decision is the first step in all of this process. The second point was just that, back to Judge Stranch's point about speaking, actually, if our clients, according to my professor, that if they were to speak to each other in the yard and they were to have a group of three or four inmates walking around the yard speaking about Christian identity and a guard heard them, that could be grounds for misconduct because they're discussing a non-recognized faith. The last... Do you have a citation to where in the policy it says that? I don't necessarily, Your Honor, but I could supplement, Your Honor. That's why you cited your professor. That's quite an honor. But I could provide that to the court if necessary. The last point I'd just like to point out was in the lower court's citation of the string citation from Lovelace v. Lee, just that last case that it cites is a Seventh Circuit case, the Civil Liberties for Urban Believers case, and it cites an effectively impracticable standard. And that's actually a case that the Seventh Circuit has looked at after, in light of Holt v. Hobbs and the Hobby Lobby decision, said, well, that effectively impracticable standard is a little too stringent for what a substantial burden actually should be. And so the Seventh Circuit has actually overturned that in more recent cases. And so, yeah. If there's any other further questions? All right. Thank you, Your Honors. I want to compliment you on an excellent job. Thank you. Appreciate it. All right. Case will be submitted. May call the next case.